**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| ANGELA RAETHER<br>P.O. Box 208<br>Medway, OH 45341 | CASE NO. _____<br><br>Judge _____ |
|        Plaintiff, | |
| v. | |
| BRAVO BRIO RESTAURANT GROUP,<br>INC.<br>777 Goodale Blvd., Suite 100<br>Columbus, OH 43212 | **COMPLAINT**<br>**WITH JURY DEMAND** |
| Also serve Statutory Agent: | |
| CORPORATION SERVICE COMPANY<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215 | |
| and | |
| JOHN DOE 1-10<br>(Names and addresses currently unknown) | |
| and | |
| ABC CORPORATION 1-10<br>(Names and addresses currently unknown) | |
|        Defendants. | |

Plaintiff, Angela Raether, on behalf of herself and all other persons similarly situated, known and unknown, for her Complaint against Defendants BRAVO BRIO Restaurant Group, Inc., John Doe 1-10, and ABC Corporation 1-10 (collectively referred to as "Defendant BBRG") state as follows:

# I.  INTRODUCTION

1.     This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., Article II, §34a of the Ohio Constitution, the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. § 4111.01 et seq., and the Internal Revenue Code, 26 U.S.C. § 7434. As set forth below, Defendant BBRG has a long standing policy and practice throughout its BRIO brand of restaurants under which its waitstaff employees were: (1) required to "tip out" employees, but had those tipped out amounts reported as income to them *instead of* the individual who was tipped out and *actually received* the funds; and/or (2) required or instructed to "tip-out" employees who do not regularly and customarily receive tips, such as the kitchen worker whose job it is to scrape food off dirty plates.  Plaintiff on behalf of herself and all other similarly situated employees now seeks restitution for the taxes paid on over-reported income, statutory damages under 26 U.S.C. § 7434, the difference between full minimum wage and the tip credit wage that they received, liquidated damages, treble damages, attorney fees and costs, and any other damages to which they may be entitled under law or equity.

# II.  JURISDICTION AND VENUE

2.     This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and may assume supplemental jurisdiction over Plaintiff's state law claims on the basis of 28 U.S.C. § 1367.

3.     Venue with the Court is appropriate pursuant to 28 U.S.C. § 1391(b) because Defendant BBRG is located within this judicial district and all or a substantial part of the events or omissions complained of giving rise to the claims occurred within this judicial district.

# III.  PARTIES

4. Plaintiff Angela Raether is a citizen of the United States who resides in Clark County, Ohio. Plaintiff was employed by Defendant BBRG as a member of the waitstaff, who performed various non-managerial and non-administrative duties, such as serving customers, at the Brio Restaurant located at 4459 Cedar Park Drive, Beavercreek, OH, from March 2010 until July 2016. Plaintiff Raether was not exempt from the minimum wage provisions of the FLSA or Ohio law. Plaintiff Raether was paid less than the full minimum wage per hour and Defendant BBRG took a tip credit based on the tips she received from customers.

5. The class of similarly situated employees consists of all current and former non-exempt employees of Defendant BBRG, who as members of the waitstaff, were unable to accurately record the amounts they tipped out to other employees such that their income was over-reported by Defendant BBRG, and/or were required or instructed to "tip out" employees who do not regularly and customarily receive tips.

6. Defendant BRAVO BRIO Restaurant Group, Inc. ("Defendant BBRG") is an Ohio corporation with its principle place of business in Columbus, Ohio, and has locations across the nation. To the best of Plaintiff's knowledge, information and belief, at all times relevant herein, Defendant BBRG has provided management, policies, and exercises control over significant aspects of the day-to-day operations of the restaurants operating under the brand name BRIO Tuscan Grill ("BRIO"), is engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A), is an "employer" within the meaning of the FLSA and Ohio law, and filed information returns described in 26 U.S.C. § 7434 reporting wage payments made to employees.

7. Defendants John Doe 1-10 are individuals whose identities and addresses are currently unknown but will be discovered once Plaintiff has had a reasonable opportunity to

engage in discovery. Defendants John Doe 1-10 are liable to Plaintiff for damages. At all times relevant herein, some or all of Defendants John Doe 1-10 have owned or operated one or more of the restaurants known as BRIO; were engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A); were an "employer" within the meaning of the FLSA and/or Ohio law; and/or filed an information return described in 26 U.S.C. § 7434.

8. Defendants ABC Corporation 1-10 are companies whose identities and addresses are currently unknown but will be discovered once Plaintiff has had a reasonable opportunity to engage in discovery. Defendants ABC Corporation 1-10 are liable to Plaintiff for damages. At all times relevant herein, some or all of Defendants ABC Corporation 1-10 have owned or operated one or more of the restaurants known as BRIO; were engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A); were an "employer" within the meaning of the FLSA and/or Ohio law; and/or filed an information return described in 26 U.S.C. § 7434.

**IV. <u>STATEMENT OF THE CASE</u>**

9. Plaintiff reiterates and incorporates by reference all of the preceding paragraphs as if fully rewritten herein.

10. At all times relevant, Plaintiff was employed by Defendant BBRG in the position of server.

11. At all times relevant, Plaintiff was paid an hourly wage less than the statutory minimum wage.

12. Before, throughout, and since Plaintiff's employment with Defendant BBRG, Defendant BBRG employed numerous other waitstaff employees who performed the same job

duties as Plaintiff and who were compensated in the same manner as Plaintiff (the "Similarly Situated Employees").

13.    Defendant BBRG required or instructed Plaintiff and Similarly Situated Employees to share their tips or "tip out" other employees, some of whom did not regularly and customarily receive tips.

14.    Plaintiff and Similarly Situated Employees were required or instructed to tip out the following other employees: food runner, server assistant, bartender, the Dish Machine Supervisor, and possibly others.

15.    The Dish Machine Supervisor ("DMS") works inside the kitchen to scrape food off dirty plates.

16.    The DMS is a "back-of-the-house" position.

17.    The DMS does not regularly and customarily receive tips from customers.

18.    Most of the tips received by Plaintiff and Similarly Situated Employees were paid for by credit card.  Some tips were received in cash.

19.    At the end of each shift, Plaintiff and Similarly Situated Employees were required to use the company-wide computer system provided by Defendant BBRG to report any cash tips received, which were then added to credit card tips already reported in the computer system. Plaintiff and Similarly Situated Employees were then required to input the tip-out amounts distributed to other employees.

20.    The tip and tip-out information inputted by Plaintiff and Similarly Situated Employees was used by Defendant BBRG for payroll purposes, including reporting employee income to the IRS.

21.    The computer system provided by Defendant BBRG did not allow for accurate reporting of the tipped-out amounts.

22.    Plaintiff and Similarly Situated Employees would attempt to input the amounts they tipped out to other employees but the computer system would state that the tip-out amounts reported were "too high," although they were the amounts Plaintiff and Similarly Situated Employees were required or instructed to tip out.

23.    On multiple occasions, Plaintiff informed Defendant BBRG's managers of the fact that the computer reported that her tip-out amounts were "too high" and would therefore not allow her to correctly input the amounts she actually tipped out to other employees, as required.

24.    Plaintiff is aware of Similarly Situated Employees informing managers of this same situation.

25.    On multiple occasions, Defendant's managers told Plaintiff and Similarly Situated Employees that the BBRG computer system was set up that way and they had to reduce the tip-out amounts inputted into the system until the computer accepted the entry.

26.    Plaintiff and Similarly Situated Employees would not be able to end their shifts until the computer system accepted the entry for tipped-out amounts.

27.    Because of the setup of Defendant's computer system, upon the instruction of Defendant's managers, and because they had no other choice in order to end their shifts, Plaintiff and Similarly Situated Employees would input tipped-out amounts that were less than the amounts actually tipped out to other employees.

28.    Defendant BBRG's managers knew that this resulted in Plaintiff and Similarly Situated Employees inaccurately reporting their tip-out amounts.

29.     Since Plaintiff and Similarly Situated Employees could not accurately input the tipped-out amounts, Plaintiff and Similarly Situated Employees were taxed on more income than they actually received.

30.     Defendant BBRG falsely and fraudulently used the information from this computer system to overstate the income received by Plaintiff and Similarly Situated Employees when filing Form W-2 information returns with the IRS.

## V.     COLLECTIVE ACTION ALLEGATIONS

31.     Plaintiff reiterates and incorporates by reference all of the preceding paragraphs as if fully rewritten herein.

32.     Plaintiff brings the FLSA claims under 29 U.S.C. § 216(b) as a collective action on behalf of the following opt-in Class (the "FLSA Class"):

> All BRIO restaurant waitstaff employees who were paid by Defendant BBRG an hourly wage less than the full minimum wage and who, at any time from three years prior to the filing of this Complaint through the present, 1) were required to tip out employees but were unable to accurately record the amounts they tipped-out such that their income was over-reported by Defendant BBRG to the IRS, and/or 2) were required or expected to tip-out employees who do not regularly and customarily receive tips.

33.     Plaintiff is similarly situated to all former and current BRIO waitstaff employees described in the FLSA Class.

## VI.     OHIO CLASS ACTION ALLEGATIONS

34.     Plaintiff reiterates and incorporates by reference all of the preceding paragraphs as if fully rewritten herein.

35.     Plaintiff brings this action pursuant to O.R.C. § 4111.14(K) and Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and as representative of a class of similarly situated individuals who have been subjected to Defendant BBRG's violations of the minimum

wage provisions of Article II, Section 34a of the Ohio Constitution, Ohio's Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *at seq*., and Ohio common law (the "Ohio Class").

36.     This class action is proper under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3).  The requirements of Rule 23(a), (b)(2), and (b)(3) are met with respect to the Ohio Class defined below:

> All persons who were employed by Defendant BBRG as a waitstaff employee at one of Defendant BBRG's Ohio BRIO restaurants who were paid by Defendant BBRG an hourly wage less than the full minimum wage and who, at any time from three years prior to the filing of this Complaint through the present, 1) were required to tip out employees but were unable to accurately record the amounts they tipped out such that their income was over-reported by Defendant BBRG to the IRS, and/or 2) were required or expected to tip-out employees who do not regularly and customarily receive tips.

37.     Although the precise number of the class members is unknown to Plaintiff, upon information and belief the number is well into the hundreds considering Defendant BBRG operates approximately twenty BRIO restaurants in the state of Ohio, such that joinder is impractical.  The disposition of each Ohio Class member's claims through the class action procedure will benefit the parties, the Court, and society as a whole.

38.     Plaintiff will fairly and adequately represent and protect the Ohio Class members' interests, and are committed to the vigorous prosecution of this action.

39.     Plaintiff has no conflicts of interest and has retained counsel who is competent and has experience in class actions.

40.     Plaintiff's claims are typical of the Ohio Class members' claims.  Plaintiff and the Ohio Class members work or have worked for Defendant BBRG and have been subjected to Defendant BBRG's wage and hour policies and practices and employment policies and practices, which create a pattern or practice of failing to pay minimum wages, failing to allow employees

to keep all of their tips, and failing to allow servers to adequately and appropriately document the amount they are tipping out to other employees. Ohio Class members are victims of the same actions and conduct of Defendant BBRG as the Plaintiff.

41. Common questions of law and fact exist as to all members of the Ohio Class and predominate over questions affecting individual members of the Ohio Class.

42. The common questions include, but are not limited to, the following:

    i. Whether Defendant BBRG denied BRIO waitstaff employees minimum wage per Ohio law by, among other things, taking a tip credit (which is the difference between the full minimum wage and the wage actually paid) based on an invalid tip pool;

    ii. Whether Defendant BBRG failed to allow servers to retain all of their tips;

    iii. Whether Defendant BBRG failed to allow servers to accurately document the amount they tip out to other employees;

    iv. Whether Defendant BBRG's conduct was willful;

    v. Whether Defendant BBRG received a benefit from its unlawful policies and practices;

    vi. Whether Defendant BBRG's conduct as described above violates Article II, §34a of the Ohio Constitution governing payment of minimum wages; and

    vii. Whether Defendant BBRG's conduct violates the Ohio Minimum Fair Wage Standards Act.

43. As noted above, Defendant BBRG has acted on grounds that apply generally to the Class, so that final relief is appropriate respecting the Class as a whole.

44.     A class action is appropriate because the common questions of law and fact enumerated above predominate over questions affecting only individual members of the Ohio Class.

45.     A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted in this action, as the financial interest of each individual Ohio Class member is relatively small, making it economically impracticable to pursue remedies other than by a class action.  As such, the Ohio Class members have little interest in individually controlling the prosecution of separate actions.

46.     If individual actions were to be brought by the members of the Ohio Class, the resulting duplication of lawsuits would cause undue hardship, inefficiencies, and expense to the Court and the litigants, and the nature of the claims is such that it is unlikely that many such claims would be pursued other than on a class basis.

47.     Given the above considerations, it is desirable to concentrate the litigation of the claims in this particular forum.

48.     Absent a class action, Defendant BBRG would likely retain the benefits of its wrongdoing, including its cost savings resulting from improperly taking a tip credit in paying the Ohio Class members, resulting in a miscarriage of justice.

49.     Notice can be provided to the members of the Ohio Class by using techniques and a form of notice similar to those customarily used in class actions including individual mailed notice, email notice, and notice by publication, as appropriate.

## VII.  <u>NATIONWIDE CLASS ACTION ALLEGATIONS</u>

50.     Plaintiff reiterates and incorporates by reference all of the preceding paragraphs as if fully rewritten herein.

51.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and as representative of a class of similarly situated individuals who have been subjected to Defendant BBRG's violations of the 26 U.S.C. § 7434 (the "Nationwide Class").

52.     This class action is proper under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3).  The requirements of Rule 23(a), (b)(2), and (b)(3) are met with respect to the Nationwide Class defined below:

> All persons who were employed by Defendant BBRG as a waitstaff employee at any one or Defendant BBRG's BRIO restaurants at any time from January 1, 2010 through the present and who were required to tip out employees but were unable to accurately record the amounts they tipped out such that their income was over-reported by Defendant BBRG to the IRS.

53.     Although the precise number of the Nationwide Class members is unknown to Plaintiff, upon information and belief the number is well into the hundreds, and likely into the thousands, considering Defendant BBRG operates BRIO restaurants throughout the nation, such that joinder is impractical.  The disposition of each Nationwide Class member's claims through the class action procedure will benefit the parties, the Court, and society as a whole.

54.     Plaintiff will fairly and adequately represent and protect the Nationwide Class members' interests, and are committed to the vigorous prosecution of this action.

55.     Plaintiff has no conflicts of interest and has retained counsel who is competent and has experience in class actions.

56.     Plaintiff's claims are typical of the class members' claims.  Plaintiff and the Nationwide Class members work or have worked for Defendant BBRG and have been subjected to Defendant BBRG's required system of reporting tips such that waitstaff employees who are required to tip out other employees have their income overstated by Defendant BBRG.

Nationwide Class members are victims of the same actions and conduct of Defendant BBRG as the Plaintiff.

57.    Common questions of law and fact exist as to all members of the Nationwide Class and predominate over questions affecting individual members of the Nationwide Class.

58.    The common questions include, but are not limited to, the following:

i.    Whether Defendant BBRG overstated the income of waitstaff employees in reporting the same to the IRS by using a computer system that did not allow employees to accurately input the tips they were required to distribute to other employees;

ii.    Whether in so doing Defendant BBRG filed fraudulent information returns with the IRS;

iii.    Whether Defendant BBRG's conduct was willful; and

iv.    Whether Defendant BBRG's conduct as described above violates 26 U.S.C. § 7434.

59.    As noted above, Defendant BBRG has acted on grounds that apply generally to the Nationwide Class, so that final relief is appropriate respecting the Nationwide Class as a whole.

60.    A class action is appropriate because the common questions of law and fact enumerated above predominate over questions affecting only individual members of the Nationwide Class.

61.    A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted in this action, as the financial interest of each individual Nationwide Class member is relatively small, making it economically impracticable to pursue

remedies other than by a class action. As such, the Nationwide Class members have little interest in individually controlling the prosecution of separate actions.

62.     If individual actions were to be brought by the members of the Nationwide Class, the resulting duplication of lawsuits would cause undue hardship, inefficiencies, and expense to the Court and the litigants, and the nature of the claims is such that it is unlikely that many such claims would be pursued other than on a class basis.

63.     Given the above considerations, it is desirable to concentrate the litigation of the claims in this particular forum.

64.     Absent a class action, Defendant BBRG would likely retain the benefits of its wrongdoing (including but not limited to accounting costs and the costs associated with reprogramming its company-wide computer system) and the Nationwide Class members are left having overpaid taxes for income they did not receive because of Defendant BBRG's acts, resulting in a miscarriage of justice.

65.     Notice can be provided to the members of the Nationwide Class by using techniques and a form of notice similar to those customarily used in class actions including individual mailed notice, email notice, and notice by publication, as appropriate.

## VIII. <u>CAUSES OF ACTION</u>

### COUNT ONE:  VIOLATION OF THE FLSA
**[Brought by Plaintiff Individually and on Behalf of All Others Similarly Situated]**

66.     Plaintiff reiterates and incorporates by reference all of the preceding paragraphs as if fully rewritten herein.

67.     A "tip credit" can be used to pay tipped employees.  The employer pays a minimum cash wage that is less than the full minimum wage.  The employer takes a "tip credit"

by allowing the tips an employee earns to makes up for the difference between the minimum cash wage paid by the employer and the full minimum wage.

68.     In order to take a tip credit, an employer must satisfy two statutory prerequisites: 1) the employer must inform the employee of the provisions of the FLSA regarding tip credits, and 2) all tips received by the employee must be retained by the employee, except for amounts distributed to other employees who customarily and regularly receive tips pursuant to a valid tip pool. 29 U.S.C. §203(m).

69.     Defendant BBRG took a tip credit in paying Plaintiff and Similarly Situated Employees.

70.     Defendant BBRG had a policy or practice of requiring or instructing Plaintiff and Similarly Situated Employees to "tip out" other employees who do ***not*** customarily and regularly receive tips, such as the DMS.

71.     Additionally, 29 C.F.R. § 531.54 states that tips distributed through a tip pool belong to the employee who ultimately retains them when applying the provisions of 29 U.S.C. § 203(m) and (t).  As such, failure to allow the accurate reporting of employee tips – such that the tips distributed through the tip pool are ***not*** reported as income to the employee who ultimately retains them – renders a tip pool invalid.

72.     At the end of each shift, Plaintiff and Similarly Situated Employees were required to use the company-wide computer system provided by Defendant BBRG to report any cash tips received, which were then added to credit card tips already reported in the computer system. Plaintiff and Similarly Situated Employees were then required to input any tipped-out amounts distributed to other employees.

73.     Defendant BBRG used this information for payroll purposes, including reporting employee wages and tips to the IRS.

74.     The computer system provided by Defendant BBRG did not allow for accurate reporting of tipped-out amounts.

75.     Plaintiff and Similarly Situated Employees would attempt to input the amounts they tipped out to other employees but the computer system would state that the tip-out amounts reported were "too high," although they were the amounts Plaintiff and Similarly Situated Employees were required or instructed by Defendant BBRG to tip out.

76.     On multiple occasions, Plaintiff informed Defendant BBRG's managers of the fact that the computer reported that her tip-out amounts were "too high" and would therefore not allow her to correctly input the amounts she actually tipped out to other employees, as required.

77.     Plaintiff is aware of Similarly Situated Employees informing Defendant BBRG's managers of this same situation.

78.     On multiple occasions, Defendant's managers told Plaintiff and Similarly Situated Employees that the BBRG computer system was set up that way and they had to reduce the tip-out amounts inputted into the system until the computer accepted the entry.

79.     Plaintiff and Similarly Situated Employees would not be able to end their shifts until the computer system accepted the entry for tipped-out amounts.

80.     Because of the setup of Defendant's computer system, upon the instruction of Defendant's managers, and because they had no other choice in order to end their shifts, Plaintiff and Similarly Situated Employees would input tipped-out numbers that were less than the amounts actually tipped out to other employees.

81.     Tips given to other employees by Plaintiff and Similarly Situated Employees pursuant to the required tip pool were included in Plaintiff's and Similarly Situated Employees' income, rather than in the income of the employees who actually received the tipped-out amounts.

82.     Each of these policies and procedures independently render Defendant BBRG's tip pool invalid and therefore, make Defendant BBRG ineligible to take a tip credit when paying Plaintiff and Similarly Situated Employees.

83.     Because Defendant BBRG was not entitled to take a tip credit in paying Plaintiff and Similarly Situated Employees, Defendant BBRG failed to pay Plaintiff and Similarly Situated Employees the required minimum wage. This constitutes a violation of 29 U.S.C. § 203(m), which requires employees to be paid no less than the minimum wage.

84.     Defendant BBRG knew their compensation practices, as described in this Complaint, were in violation of the FLSA or Defendant BBRG should have inquired further into whether said policy and practice was in violation of the FLSA and failed to make adequate further inquiry.

85.     Defendant BBRG's conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) such that Plaintiff and members of the FLSA Class are entitled to recover from Defendant an appropriate amount for all hours worked including minimum wages during the period beginning three years prior to the commencement of this action together with liquidated damages in an amount equal thereto and attorney fees pursuant to 29 U.S.C. § 216(b).

**COUNT TWO**
**DENIAL OF MINIMUM WAGES UNDER ARTICLE II, §34a**
**OF THE OHIO CONSTITUTION**
**[Brought by Plaintiff Individually and on Behalf of All Others Similarly Situated]**

86.     Plaintiff reiterates and incorporates by reference all of the preceding paragraphs as if fully rewritten herein.

87.     Under the Article II, §34a of the Ohio Constitution, Defendant BBRG was required to pay Plaintiff and members of the Ohio Class the legally-required minimum wage for all hours worked.

88.     Defendant BBRG's conduct as described above violates Article II, §34a of the Ohio Constitution governing payment of minimum wage.

89.     Defendant BBRG has willfully and with reckless disregard deprived Plaintiff and the Similarly Situated Employees of the payment of minimum wage compensation under Article II, § 34a of the Ohio Constitution, which entitles Plaintiff and Similarly Situated Employees to recover from Defendant an appropriate amount for all hours worked including minimum wages available under Ohio law, together with treble and/or punitive damages, attorney fees and costs, and other appropriate relief.

## COUNT THREE
## DENIAL OF MINIMUM WAGES UNDER THE OHIO
## MINIMUM FAIR WAGE STANDARDS ACT
### [Brought by Plaintiff Individually and on Behalf of All Others Similarly Situated]

90.     Plaintiff reiterates and incorporates by reference all of the preceding paragraphs as if fully rewritten herein.

91.     Under the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. § 4111.01 et seq., Defendant BBRG was required to pay Plaintiff and members of the Ohio Class the legally-required minimum wage for all hours worked.

92.     Defendant BBRG's conduct as described above violates the OMFWSA provisions governing payment of minimum wages.

93.     Defendant BBRG has willfully and with reckless disregard deprived Plaintiff and members of the Ohio Class of the payment of minimum wage compensation under the OMFWSA, which entitles Plaintiff and Similarly Situated Employees to recover from Defendant an appropriate amount for all hours worked including minimum wages available under Ohio law, together with treble and/or punitive damages, attorney fees and costs, and other appropriate relief.

## COUNT FOUR
## VIOLATION OF INTERNAL REVENUE CODE § 7434
**[Brought by Plaintiff Individually and on Behalf of All Others Similarly Situated]**

94.     Plaintiff reiterates and incorporates by reference all of the preceding paragraphs as if fully rewritten herein.

95.     Under 26 U.S.C. § 7434, any person who files a fraudulent information return with respect to payments purported to be made to any other person is liable to that other person in an amount equal to the greater of $5,000 or the sum of actual damages sustained, plus attorney fees and costs.

96.     Defendant BBRG knew that the computer system they used for reporting tips and tipped-out amounts led to the overstatement of income for Plaintiff and Similarly Situated Employees.  Yet Defendant BBRG insisted on using this system and the false information for payroll purposes.

97.     This system resulted in Defendant BBRG significantly overstating the income of Plaintiff and Similarly Situated Employees on the Form W-2 information return submitted to the IRS.

98.     On an annual basis, the overstated amount could be hundreds or thousands of dollars of income reported to the IRS, but not actually received, by each employee.

99.     Plaintiff and Similarly Situated Employees have been substantially harmed by this overstatement of income in the form of taxes paid on income not received, higher tax rates due to higher total income, loss of benefits due to an overstatement of income, and other damages.

## IX.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff and all other Similarly Situated Employees of Defendant BBRG described above in paragraph 32 and who elect to opt-in to this collective action as described with particularity in 29 U.S.C. § 216(b), and also those who are encompassed by the Rule 23 class definitions described above in paragraphs 36 and 52, demand judgment against Defendant BBRG as follows:

1. An Order permitting this litigation to proceed as a collective action;

2. Prompt notice, pursuant to 29 U.S.C. § 216(b), to all similarly situated employees of Defendant BBRG described above in paragraph 32 that this litigation is pending and that they have right to "opt-in" to this litigation;

3. For an order certifying the Ohio Class and the Nationwide Class, pursuant to Rule 23, appointing Plaintiff as representative of the Class, and appointing the law firms listed below as representing Plaintiff as counsel for the Class;

4. Judgment against Defendant BBRG for violating the Fair Labor Standards Act, including an award of unpaid wages and liquidated damages thereon consistent with the provisions of the Fair Labor Standards Act;

5. An Order declaring that Defendant's violations of the Fair Labor Standards Act were willful;

6. Judgment against Defendants for violating the Ohio Constitution and the OMFWSA, including an award of unpaid wages and treble damages thereon consistent with the provisions of the Ohio Constitution and the Ohio Minimum Fair Wage Standards Act;

7. An Order declaring that Defendants' violations of the Ohio Constitution and the OMFWSA were willful;

8. Judgment against Defendants for violating 26 U.S.C. § 7434 in an amount equal to the greater of $5,000 or the sum of actual damages sustained.

9. An Order enjoining Defendant from retaliating against Plaintiff or any other employee who may join in or assist in this action or have sought or requested payment in accordance with applicable laws;

10. Pre-judgment and post-judgment interest, as provided by law;

11. An award of Plaintiff's reasonable attorneys' fees and costs under the FLSA, Ohio law, and 26 U.S.C. § 7434(b); and

12. Such other relief, which in law or equity is appropriate.


Respectfully submitted,

Olsheski Law Co., L.P.A.

/s/ Jessica L. Olsheski
Jessica L. Olsheski (#0078063)
600 East Rich Street
Columbus, OH 43215
TEL: 614-252-5500
FAX: 614-252-5058
jessica.olsheski@justice-law.net

BECKMAN WEIL SHEPARDSON LLC

/s/ Kristen M. Myers
Kristen M. Myers (#0078047)
Kimberly S. Phillips (#0091571)
Peter L. Cassady (#0005562)
895 Central Avenue, Suite 300
Cincinnati, OH 45202
TEL: 513-621-2100
FAX: 513-621-0106
kmyers@beckman-weil.com
kphillips@beckman-weil.com
petercassady@beckman-weil.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff Angela Raether demands a trial by jury for all issues of fact in connection with this Complaint.

/s/ Kristen M. Myers
Kristen M. Myers (#0078047)

T:\Raether\Angela-10140\Pleadings\Complaint - 4-7-17 - FINAL.docx